UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------------------X
MIGUEL TORRES,

          Plaintiff,

    - against -

POLICE OFFICER MOISE VARGAS, Shield No. 294,
POLICE OFFICERS "JOHN DOE", JEFF COE, (Badge Nos.
Unknown, Names being fictitious but intended to be
officers involved in the arrest of Plaintiff herein)  In their
Individual and official capacities, THE CITY OF YONKERS,
and THE YONKERS POLICE DEPARTMENT,


          Defendants.
------------------------------------------------------------------------------------X

18 CV 11387

**COMPLAINT**

**TRIAL BY JURY
DEMANDED**

## PRELIMINARY STATEMENT

The plaintiff brings this action against all defendants pursuant to 42 U.S.C. Section 1983 and 1988, the Fourth and Fourteenth Amendments to the United States Constitution, and under the common law of the United States and New York against to redress the deprivation under color of law of plaintiff's rights, privileges and immunities secured by the Constitution of the United States. Plaintiff seeks money damages to redress and remedy the deprivations of his constitutional rights. Plaintiff seeks an award of attorneys' fees and costs pursuant to 42 U.S.C. Section 1988 and pursuant to any other laws that may apply.

It is alleged that the individual police officer defendants made an unreasonable search and seizure of the person of MIGUEL TORRES, violating his rights under the Fourth and Fourteenth Amendments to the United States Constitution, and that these defendants assaulted and battered the person of MIGUEL TORRES, and It is further alleged that these violations and torts were committed as a result of the policies, practices and customs of THE CITY OF YONKERS

## JURISDICTION - VENUE - CONDITIONS PRECEDENT

1.     This action is brought pursuant to 42 U.S.C. Section 1983 and 1988 to redress the plaintiff's rights under the Constitution of the United States. Jurisdiction is

based upon 28 U.S.C. Sections 1331 and 1343.

2.      All of the actions, omissions, and events complained of took place within the County of Westchester, City of Yonkers, and State of New York, and within the venue of this court.

3.      The amount in controversy exclusive of interests and costs exceeds the sum of $100,000.

## PARTIES

4.      The plaintiff is a citizen of the United States and a resident of the County of Bronx, State of New York.

5.      Defendant THE CITY OF YONKERS (Hereinafter referred to as "THE CITY") is a body corporate and politic, duly organized and existing under and by virtue of the laws of the State of New York, and pursuant to law is capable of suing and being sued in this court.

6.      At all times hereinafter mentioned the THE YONKERS POLICE DEPARTMENT(Hereinafter referred to as "YPD") was and still is a subdivision subject to the control of the THE CITY.

7.      Upon information and belief, defendant YPD is a division of THE CITY organized and existing under and by virtue of the laws of THE CITY and the State of New York.

8.      Defendant THE CITY is responsible for the policies, practices and customs of YPD.

9.      Defendant THE CITY is responsible for the hiring training, supervision, retention, control and discipline of YPD and its officers.

10.     Defendant THE CITY is and was the employer of the personnel named herein as individual defendants.

11.     Defendant THE CITY is also responsible for the operation, practices, and totality of conditions of the YPD.

12.     Defendant YPD is responsible for the policies, practices and customs of

YPD.

13.     Defendant YPD is responsible for the hiring training, supervision, retention, control and discipline of YPD and their officers.

14.     Defendant YPD is and was the employer of the personnel named herein as individual defendants.

15.     Defendant YPD is also responsible for the operation, practices, and totality of conditions of the YPD.

16.     THE CITY acts, or fails to act through its policy-making officials including but not limited to its supervisor, town board, and the chief of the YPD; the acts and edicts of these policy making officials represent also the policies, practices and customs of THE CITY.

17.     THE CITY and YPD have, jointly and severally, a constitutional and statutory responsibility for the conditions at the YPD and are jointly and severally responsible for ensuring that the operations of said precinct are in conformity with constitutional requisites.

18.     THE CITY and YPD are and were jointly and severally responsible for ensuring that the police officers of the YPD and more specifically those officers named as defendants herein, obeyed the regulations of the YPD, THE CITY, the ordinances and laws of THE CITY, and the laws and the Constitution of the State of New York and the United States.

19.     Defendants,  POLICE OFFICER MOISE VARGAS, Shield No. 294, POLICE OFFICERS "JOHN DOE", JEFF COE, (Badge Nos. Unknown, Names being fictitious but intended to be officers involved in the arrest of Plaintiff herein) are and were police officers of the YPD and employees of the YPD and of THE CITY, and at all times herein were acting in such capacity as the agents, servants and employees of YPD and THE CITY.

20.     The defendant officers were at all times relevant to this complaint duly

appointed and acting officers of the YPD and of THE CITY, acting under color of law; to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the State of New York and THE CITY and YPD.

21.    At all times relevant hereto and in all of their actions described herein, each defendant was acting under color of law, state authority, statute, custom or usage, and pursuant to their official authority. All of the actions were done intentionally.

## FACTS

22.    The arrest occurred on November 18, 2016. The incident arose near 82 Fortfield Ave., City of Yonkers. There, the plaintiff was arrested, imprisoned, assaulted and battered, and subject to violation of 42 USC 1983 via use of excessive force. At that date and time, the plaintiff was present at the public way, when the above named officers arrived on the scene. A handgun was recovered from the wheel area of a car. Plaintiff was nowhere near this gun and it was not in his possession. He was arrested, then cuffed in an excessively tight manner,  taken to the police station and then prosecuted for two years before the case was dismissed. The plaintiff was guilty of no crime. He was not identified by any complaining witness as having committed a crime.

23.    Plaintiff was  lawfully present at the location when Defendants intentionally assaulted and battered the plaintiffs herein as specified above in the course of effectuating an arrest without probable cause to believe the claimant herein had committed any crime or offense.

24.    Plaintiff was verbally abused and subjected to verbal intimidation.

25.    Plaintiff was roughly cuffed hands behind his back, and remained in custody for over 24 hours.

26.    Plaintiffs had not resisted or assaulted the defendants in any way, and such force as was used against them was unnecessary, unreasonable, and excessive.

27.    At no time during the events described above was the plaintiff intoxicated, incapacitated or disorderly, or a threat to the safety of himself  or others. He

- 4 -

had committed no criminal offenses.

28.     The defendants had no warrant for the arrest of the plaintiff, no probable cause for the arrest of the plaintiffs, and no legal excuse or cause to perform an unconstitutional search and seize the person of the plaintiff.

29.     Defendants did not search and seize plaintiff pursuant to a valid  warrant.

30.     Defendants did not present a copy of a warrant to plaintiff.

31.     If a warrant was in the officers possession, they did not execute it in a manner or at a time authorized by the warrant.

32.     Upon information and belief, Plaintiff was not listed as or described as a suspect or target on any warrant or application for any warrant.

33.     At no time did the defendants possess information that would lead a reasonable police officer to believe that probable cause existed to arrest plaintiff.

34.     As a result of the foregoing plaintiff suffered mental anguish, shock, fright, apprehension, embarrassment, humiliation and deprivation of his constitutional rights.

35.     At all times during the events described above, the defendant police officers were engaged in a joint venture. The individual officers assisted each other in performing the various actions described, and lent their physical presence and support and the authority of their office to each other during said events.

36.     All of the above acts were done both individually and in concert and intentionally and while acting under color of law, and in the scope of employment with THE CITY and the YPD. It was a conspiracy to deprive the plaintiff of his civil rights guaranteed under the Constitution of the State of New York and the United States and the laws of New York State and the laws of the United States.

37.     THE CITY and the YPD had a policy of not training their employees with respect to the proper use of force and allowing persons such as plaintiffs herein to be assaulted, battered and improperly searched and seized.

38.     If THE CITY and YPD had a policy of training their employees with

respect to the proper use of force, same was not enforced.

39.     On information and belief, the abuse to which the plaintiff was subjected was consistent with an institutionalized practice of THE CITY and the YPD which was known to them and/or ratified by THE CITY and the YPD, with the defendants at no time having taken any effective action to prevent their employees from continuing to engage in such misconduct and violation of constitutional rights and violations of law.

40.     On information and belief, defendant THE CITY and the YPD had prior notice of the unlawful propensities of the individual defendants but took no steps to train them, correct their abuse of authority, or to discourage their unlawful use of authority or to terminate their employment. The failure to properly train defendants included the failure to instruct them in applicable sections of the New York State Penal Law, and proper use of force, and failed to properly train them with respect to the constitutional rights of citizens.

41.     On information and belief THE CITY and the YPD authorized, tolerated as institutional practices, and ratified the misconduct heretofore described.

42.     Then individual officers are sued in their official capacities.

43.     The individual officers are sued also in their official capacities.

44.     The individual officers reside in the state of New York.

45.     The Yonkers Police Department maintains it's principal headquarters at 100-104 South Broadway, Yonkers, NY 10701

46.     At all pertinent times the individual defendants acted under color of state law.

47.     At all pertinent times there was no justification for the arrest made by the police officers referenced herein.

48.     There was no justification for the use of force to arrest.

49.     The force used by the officers could not be justified by self defense.

50.     The police officers referenced herein acted with actual malice towards

- 6 -

plaintiff, and with willful, wanton indifference to and deliberate disregard of the statutory and constitutional rights of plaintiff.

51.    At all pertinent times the City had a formal official policy not to have an independent civilian complaint review board (Hereinafter "CCRB").

52.    The City, through it's city council and Mayor, at all relevant times, had the authority to create an independent CCRB.

53.    The City council and Mayor are the policy makers with the City.

54.    The Police Commissioner of the City is a policy maker.

55.    The Yonkers City Council has affirmatively rejected and formally rejected at least one proposal to create an independent CCRB before August 27, 2014.

56.    The City council and/or the Mayor of Yonkers were aware, or should have been aware, that the creation of an independent CCRB would result in an enhanced ability to investigate and discipline incidents of false arrest on the part of police officers within YPD, and further, to supervise and train officers relative to the use of excessive force.

57.    By failing to, among other things, create a CCRB, the City permitted the police officers of YPD to implement or execute it's official policy, including, but not limited to, the individual officers named herein and it's police commissioner.

58.    The City was at all relevant times aware, or should have been aware that the police commissioner within it's city was overseeing the discipline of it's officers with the sole benefit of an internal review board.

59.    At all pertinent times, the review board within the Yonkers Police Department has been called the police professional standards review committee.

60    The police professional standards review committee has, at all relevant times been comprised entirely or almost entirely of board members selected at the sole discretion of the police commissioner.

61.    The police professional standards review committee has at all relevant

times been comprised entirely of members who are employed by the YPD.

62.    The City was at all pertinent times aware that various individuals and groups throughout the city were requesting the creation of an independent CCRB.

63.    The City by the affirmative act and omission of failing to and refusing to create a CCRB, had an official policy of failing to train supervise and discipline it's officers with regard to excessive force, and therefore encouraging the use of excessive force.

64.    The City at all relevant times had a custom, by virtue of the practices of it's policy makers, the including it's city council, mayor and police commissioner, of encouraging the use of false arrest on the part of it's police officers by failing to, among other things, create a CCRB, and by failing to  train supervise and discipline it's officers

65.    At al relevant times, the custom of the City and YPD to inadequately train supervise and discipline it's officers, has demonstrated a deliberate indifference to the rights of individuals which the officers of YPD would interact with, including plaintiff.

66.    This deliberate indifference is evidenced by the failure to create an independent CCRB, in the face of repeated reports of excessive force, repeated requests for the creation of such a board, and the awareness that most large cities throughout the country, including NYC, have such a board.

67.    The custom of the City and YPD's inadequately training, supervising  and disciplining it's officers, has actually caused the false arrest of plaintiff on 11/18/16 and also his malicious prosecution.

68.    It was plainly apparent, or should have been, at all relevant times, to the City policy makers, that further training and supervision was necessary, especially in view of the epidemic of excessive force allegations against the City and YPD.

69.    The YPD permitted and tolerated a pattern and practice of unreasonable false arrest and malicious prosecution by it's police officers.

70. The City and YPD has maintained a system of review of police conduct so untimely, cursory and insufficient, as to be ineffective and to permit and tolerate the

unreasonable and excessive use of false arrest and malicious prosecution by YPD members.

71.    The acts, omissions and systemic flaws, policies and customs of the City and YPD caused the YPD officers including those named herein to believe that false arrest and malicious prosecution by it's police officers would not be aggressively, honestly and properly investigated, with the likely result that officers are more likely to use false arrest and malicious prosecution against the plaintiff and others.

72.    The City and YPD has, at all relevant times, had a custom and practice of inadequately training, supervising disciplining and/or investigating it's police officers, who are involved in and/or alleged to be involved in incidents involving false arrest and malicious prosecution, which has been, at all relevant times, well known to the policy makers.

73.    The YPD has a longstanding custom and practice of failing to adequately discipline and investigate incidents and allegations of false arrest and malicious prosecution by it's police officers.

74.    The policy makers of the City and YPD are aware of the custom and practice of failing to adequately discipline and investigate incidents and allegations of false arrest and malicious prosecution by it's police officers.

75.    The City and YPD have at all relevant times failed to adequately train, supervise and investigate their officers, in view of the previous pattern of false arrest and malicious prosecution by it's police officers, which has been brought to the attention to the City, YPD and their policy makers.

76.    If the City and YPD and/or their policy makers had taken the necessary steps to adequately train, supervise and discipline it's police officers as to the use of false arrest and malicious prosecution by it's police officers, the high number of violations, including that of the plaintiff herein described, would not have occurred.

77.    The policy makers of the City and YPD have been deliberately indifferent

to the high likelihood of continued use of false arrest and malicious prosecution by it's police officers on the part of the officers of the YPD.

78.    It was plainly obvious before the incident involving plaintiff to the City and YPD policy makers that further training and supervision of the YPD officers has been and continues to be necessary in view of the high number of false arrest and malicious prosecution complaints.

79.    In this case, in addition to municipal liability being clear based on a custom and failure to train-supervise, it is clear through a plain and natural inference, based on the conduct of the multiple officers involved in the incident occurring on August 27, 2014, that official policy and custom condones the use of false arrest and malicious prosecution by it's police officers.

80.    The inadequate training and supervision amounts to a deliberate indifference to the rights of the public and was the proximate cause of the deprivation of the plaintiff's rights alleged herein.

81.    The custom of false arrest and malicious prosecution by it's police officers alleged herein is widespread and repetitive.

82.    On June 9, 2019, the US Justice Department conveyed recommendations to the City and YPD as a result of an investigation of the YPD pursuant to 42 USC 14141 and 42 USC 3789d. The justice department found the following deficiencies, among others:

> (a)    "the YPD provided us with its Manual...A review of the Manual indicates that many sections are outdated and not very well organized...For example, Policy 1.06.03,regarding the Police Professional Standards Review Committee, has an effective date of January 4, 1993. That policy does not appear to have been updated since 1993. Further, that same policy has a random and non-sequential set of numbering for each paragraph within the policy, leaving the impression that the policy was created by "cutting and pasting" a number of requirements together without any overall organization or editing prior to publication. Presentation of a policy in such a disorganized manner is an ineffective means to convey necessary information.....In addition, the overall size and structure of the Manual makes its use as a reference guide impractical for the average officer....the Manual does not provide any cross-references between policies that would

make the Manual more accessible. We recommend that the YPD update and reorganize its Manual to make it current and more user friendly. We also recommend that the YPD distribute updated and complete policies and procedures to all officers and that all officers provide a written acknowledgment of their receipt, review, and understanding of the policies and procedures...."

(b) We recommend that the YPD revise its use of force policies to provide a comprehensive policy that contains the following elements:
- 4 appropriate definitions, a use of force continuum (including intermediate weapons), guidance on the appropriate level of force allowed in specific circumstances, and detailed use of force reporting....we recommend that the YPD's use of force policy be revised to track both the federal constitutional and state standards....We note that the Manual does not address legal standards governing the use of force. We recommend that the Manual be reviewed to address applicable legal standards to provide officers with a framework for making appropriate use of force decisions....YPD does not have a central use of force policy that provides a comprehensive list of actions that are considered uses of force. Instead, YPD's use of force policy is fragmented among separate, individual, use of force policies for separate use of force tools, such as the Use of Heckler & Koch MP-5 or the Use of Oleoresin Capsium ("OC") Spray policies. See Policy 1.08.06; 1.09.03. Further, these individual use of force policies are not arranged in any organized and coordinated format vis-a-vis deadly and less than lethal force....Currently, in order for a YPD officer to grasp the YPD's requirements for use of force, the officer must read several different policies and extrapolate from those policies the YPD's definition of use of force and what constitutes permissible and impermissible uses of force....we recommend that the YPD establish a use of force policy that defines when the use of force is permissible and provides clear definitions and operational guidance on the use of deadly and less than lethal force....YPD's force-related policies fail to fully address what constitutes less than lethal force. Although there are various policies that address the use of a specific weapon, there is no policy that specifically defines use of force and delineates permissible uses of force. Because YPD officers should be fully informed of the actions that may constitute a use of force, we recommend that the YPD's use of force policy provide a comprehensive list of actions that are considered uses of force, including physical force. These examples should include actions such as takedowns and firearm brandishing. In addition, we recommend that the YPD's use of force policy identify any uses of force that are prohibited or restricted to limited circumstances (e.g., chokeholds)...."

(b) The YPD should work to improve its relationship with the Yonkers community. Citizen interviews and news reports revealed allegations of distrust and fear of the YPD. Deep seated concerns of racial animus impede attempts at reconciliation...The PPSRC was established in 1993 to allow representatives of the community an opportunity to review internal investigations alleging excessive use of force, abuse of authority, discourtesy, and the use of offensive or discriminatory language. The PPSRC was to serve a dual function: review of select internal investigations and community liaison. However, in practice, the PPSRC is outdated and inconsistent with later enacted policy. Specifically, Policy 1.06.03, circa 1993, is inconsistent with the Community Relations Policy

("CRP"), Policy 2.04.03, established in 2003. In particular, Policy 2.04.03 does not reference the PPSRC or its policy....The PPSRC does not appear to fall within the current YPD organizational structure and it is unclear whether oversight for the committee falls within the responsibility of the Community Affairs Division, Internal Affairs, or the Office of Professional Standards. It is also unclear whether the Task   Force on Police Community Relations identified in the PPSRC policy still exists, and if so, to which department it is accountable. As a result, the role of the PPSRC within the YPD and as a necessary component of community relations and the citizen complaint process is diminished.

(c)we recommend that the YPD elicit input from the community on policies that are of particular concern to members of the public. Indeed, the PPSRC policy provides some guidance for this recommendation and allows for measured community involvement in policy development

83.     The above noted deficiencies directly led to an false arrest and malicious prosecution by YPD police officers applied to the plaintiff.

84.     The above deficiencies were never corrected or addressed, and still existed until an agreement just signed by YPD and the City, to wit:

(a) The City shall maintain use-of-force policies that: a. define terms clearly; b. define "force" as that term is defined in this Agreement; c. incorporate a use-of-force process that relates the force options available to officers to the types of conduct by individuals that would justify the use of such force, and that teaches uses of other measures where appropriate, such as disengagement, area containment, surveillance, waiting out a subject, summoning reinforcements or calling in specialized units and that requires the use of a verbal warning before the use of force, when possible; d. require officers to use only the force that is reasonable in light of the resistance encountered and to de-escalate force immediately as resistance decreases; e. require that, to the extent consistent with the safety of the officer and the public, individuals should be allowed to submit to arrest before force is used; f. provide that the use of unreasonable force may subject officers to discipline, possible criminal prosecution, and/or civil liability;

85.     Had the defendants heeded the widespread false arrest and malicious prosecution by it's police officers complaints, and began changing the deficiencies noted above prior to the date of incident, the false arrest and malicious prosecution by it's police officers would not have been employed.

86.     As a direct and proximate result of the said acts of the defendants, and the abuse of authority detailed above, the plaintiff suffered the following injuries and

damages:

> a. Violation of their constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution to be free from an unreasonable search and seizure to their person - false arrest and malicious prosecution:
> b. Physical pain and suffering and emotional trauma and suffering,.

87.   The actions of the defendant officers violated the following clearly established and well settled federal constitutional rights of plaintiff:

> a. Freedom from unreasonable search and seizure of his person.
> b. Freedom from the use of excessive, unreasonable and unjustified use of force against his person.

## FEDERAL CAUSES OF ACTION

### COUNT I: 42 U.S.C. SECTION 1983
### AGAINST INDIVIDUAL DEFENDANTS

88.   Paragraphs 1 through 87 are incorporated herein by reference as though fully set forth.

89.   Plaintiff claims damages for the injuries set forth above under 42 U.S.C. Section 1983 against defendants POLICE OFFICER MOISE VARGAS, Shield No. 294, POLICE OFFICERS "JOHN DOE", JEFF COE, (Badge Nos.Unknown, Names being fictitious but intended to be officers involved in the arrest of Plaintiff herein)  In their Individual and official capacities,  for violation of his constitutional rights under color of law, in an amount to be determined by a jury after due trial.

### COUNT II: 42 U.S.C. SECTION 1983
### AGAINST THE CITY AND THE YPD

90.   Paragraphs 1-89  are incorporated herein by reference as though fully set

forth.

91.     Prior to August 27, 2014, THE CITY and the YPD developed and maintained policies or customs exhibiting deliberate indifference to the constitutional rights of persons in THE CITY, which caused the violation of plaintiff's rights.

92.     It was the policy and/or custom of THE CITY and the YPD to inadequately and improperly investigate citizen complaints of police misconduct, and acts of misconduct were instead tolerated by THE CITY and the YPD.

93.     It was the custom and policy of THE CITY and the YPD to inadequately supervise and train and retain and hire their police officers including the defendant officers, thereby failing adequately to discourage further constitutional violations on the part of their police officers. THE CITY and the YPD did not require appropriate in-service training or re-training of officers who were known to have engaged in police misconduct.

94.     As a result of the above described policies and customs, police officers of THE CITY and the YPD, including the defendant officers believed that their actions would not be properly monitored by supervisory officers and that misconduct would not be sanctioned or investigated, but would be tolerated.

95.     The above described policies and customs demonstrated a deliberate indifference on the part of the policymakers of THE CITY and the YPD to the constitutional rights of persons within THE CITY and were the cause of the violations of plaintiff's rights alleged herein.

96.     Plaintiff  claims damages for the injuries set forth above under 42 U.S.C. Section 1983 against THE CITY and the YPD for violation of his constitutional rights under color of law, in an amount to be determined by a jury after due trial.

## COUNT III FALSE ARREST AND IMPRISONMENT

97.     The allegations of Paragraphs 1-96 are incorporated by reference herein

-14-

as though fully set forth.

98.    The individual defendants were working within the scope of their authority when they committed the actions described above, and thereby confined the plaintiff without privilege.

99.    The confinement aforesaid was without probable cause or privilege.

100.    The individual defendants were careless and reckless and negligent in that they did not stop or restrain their fellow officers from confining the plaintiff.

101.    As a result of the aforesaid unconstitutional confinement, false arrest and imprisonment, in violation of the 4th and 14th amendments to the US constitution and 42 USC section 1983, the plaintiffs  sustained serious and permanent personal injuries, along with humiliation, shame, indignity, damage to reputation and suffered emotional distress, in an amount to be determined by a jury after due trial.

## COUNT IV. MALICIOUS PROSECUTION

102.    The allegations of paragraphs 1-101 are incorporated by reference herein as though fully set forth.

103.    On November 19, 2016, defendants filed false and legally insufficient criminal complaints against the plaintiff herein.

104.    At the time of said filing, the defendants knew that said complaints were false and legally insufficient. Said complaints were dismissed as such.

105.    Defendants acted wilfully, maliciously, recklessly, wantonly, and with intent to injure the plaintiff.

106.    At the time of said filing, the defendants knew that said complaints were false and legally insufficient. Said complaints were dismissed as such.

107.    Defendants acted wilfully, maliciously, recklessly, wantonly, and with intent to injure the plaintiff .

108.    As a result of the aforesaid malicious prosecution, the plaintiff sustained

serious and permanent personal injuries, along with humiliation, shame, indignity, damage to reputation and suffered extreme emotional distress, in an amount to be determined by a jury after due trial.

## DEMAND FOR RELIEF

As a result of the aforesaid, the plaintiff sustained serious and permanent personal injuries, along with humiliation, shame, indignity, damage to reputation and suffered extreme emotional distress, in an amount to be determined by a jury after due trial.

Wherefore, the plaintiff requests that this Court:

a. Award compensatory damages to the plaintiff against the defendants, jointly and severally in an amount to be determined by a jury after due trial. Not less than one million dollars ($1,000,000)
b. Award the costs of this action to the plaintiff.
c. Award reasonable attorneys fees to the plaintiff under 42 U.S.C. Section 1988 and/or any other applicable laws.
d. Award punitive damages in an amount to be determined by a jury after due trial. Not less than one million dollars ($1,000,000)
e. Award such other and further relief as this Court may deem appropriate.

Dated: Carmel, New York
December 6, 2018

JOHN P. GRILL
Grill9446
For LAW OFFICES OF JOHN P. GRILL, PC
229 Nimham Road
Carmel, NY 10512
(917) 601-5507

-16-

## VERIFICATION

The undersigned, being an attorney admitted to the practice of law in the courts of the State of New York, and the United States District Courts for the Eastern and Southern Districts, deposes and states that I am the attorney of record for the plaintiff in this matter, that I have read the contents of the summons and complaint, and know same to be true, except those matters stated to be alleged upon information and belief, and as to those matters I believe them to be true. My belief as to those matters therein not stated upon knowledge is based upon information, data, memoranda, records given to me and maintained in a file in my office. The reason I make this verification is that the petitioner is not located in the County where affirmant's office is located.

I affirm that the foregoing statements are true under penalty of perjury.

Dated: Carmel, New York
      December 6, 2018          JOHN P. GRILL, ESQ.(9446jg)